**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

A.L., an Individual f/k/a Allison Quets,

    Plaintiff,

v().                                                     Case No. 3:15-cv-1181-J-32PDB

MICHAEL SHORSTEIN, Individual,
KATHLEEN STEVENS, Individual,
SHORSTEIN & KELLY, P.A., a Florida
Professional Association, FIRST
COAST ADOPTION
PROFESSIONALS, and BRIAN
KELLY, Individual,

    Defendants.

## O R D E R

This civil RICO action is before the Court on Defendants Michael Shorstein, Brian Kelly, and Shorstein & Kelly, P.A.'s (the "Shorstein Defendants") Motion to Dismiss or Motion to Quash Service of Process (Doc. 19), Defendant First Coast Adoption Professionals' ("First Coast") Motion to Dismiss (Doc. 20), and Defendant Kathleen Stevens's Motion to Dismiss (Doc. 23), to which pro se Plaintiff A.L. filed a consolidated response. (Doc. 36).[1]

---

[1] At times, the Court will refer to the defendants collectively as "Defendants," as their arguments overlap, and Stevens's motion to dismiss adopts and incorporates by reference the other defendants' motions to dismiss.

**I.     BACKGROUND**[2]

The Shorstein Defendants operate an adoption law firm in Florida which assists both pregnant mothers and couples seeking to adopt a child. (Doc. 6, statement of the case). They work with First Coast, an adoption services agency which provides counseling services to natural mothers considering adoption, as well as with social worker Kathleen Stevens. (Id. at 4 ¶¶ 4-5).[3] In August 2005, Defendants facilitated the adoption of Plaintiff's two infant children. Plaintiff believed that she was entering an open adoption agreement which would allow future contact with her children and involvement in their lives after the adoption. (Id. at 2). However, almost immediately after signing the adoption agreement, Plaintiff changed her mind and attempted to revoke her consent. (Id. at 36 ¶ 205).

Plaintiff instituted legal proceedings to do so, including filing a lawsuit in the Fourth Judicial Circuit Court of the State of Florida in which she attempted to have the adoption set aside. (Id. at 37 ¶¶ 213-15). Following a bench trial, in June 2006, the

---

[2] On October 26, 2016, the Court ordered Plaintiff to either file a motion explaining why she should be allowed to proceed anonymously or file an amended complaint under her current name. (Doc. 35). On January 18, 2017, Plaintiff presented an Amended Sealed Complaint to the Clerk of Court without moving for leave to file under seal. The only change to the complaint is that it contains Plaintiff's current name; the allegations and prayer for relief are identical. The Court's analysis and conclusions stated herein are not affected by the amended sealed complaint. Notwithstanding that Plaintiff has failed to present any basis for filing her amended complaint under seal, to avoid any further delay in this case and to preserve the record for appeal, the Clerk shall file the amended sealed complaint on the docket under seal. Pursuant to the certificate of service, Defendants have received copies of the amended sealed complaint.

[3] The paragraphs of the complaint are improperly numbered, beginning on page 47, and therefore, the Court's citations contain both the relevant page and paragraph numbers.

court terminated Plaintiff's parental rights. (Id. at 38 ¶ 220). In December 2006, Plaintiff was arrested and incarcerated for eight months after kidnapping her children and taking them to Canada. (Id. at 39 ¶¶ 225-28). In September 2007, the Florida court granted full custody to the adoptive parents. (Id. at 39 ¶ 229). Following Plaintiff's release, in November 2007, she filed an action in North Carolina for custody and visitation, to no avail. (Id. at 39-40 ¶¶ 230-32). The court found that Plaintiff had no standing due to the termination of her parental rights, and the mere existence of the open adoption agreement did not confer the requisite standing under either North Carolina or Florida law. (Id. at 39-40 ¶ 231). Plaintiff alleges that "[i]t was at the time of the final order from the North Carolina Courts (January 2008) that [she] realized that she had been defrauded by Defendants Shorstein and Kelly, Kathleen Stevens, and First Coast Adoption Professionals." (Id. at 39 ¶ 233). She alleges that Defendants use duress, fraud, and predation against vulnerable mothers to coerce them to complete adoptions for the firm's profit, citing herself and two other women, Heather Kuhn and Rhonda Davie, as victims of Defendants' misconduct. (Id. at 2).

On October 2, 2015,[4] over ten years after Plaintiff signed the adoption agreement, she filed this lawsuit, alleging violations of the federal and Florida civil RICO statutes against all Defendants (Count I, violation of 18 U.S.C. § 1962(c); Count II, violation of 18 U.S.C. § 1962(d); Count III, violation of Fla. Stat. § 895.01, et seq.). Defendants have moved to dismiss the case, arguing (among other things) that

---

[4] Defendants state that Plaintiff filed the lawsuit on September 30, 2015, the date she signed the complaint (Doc. 6 at 54). The different dates do not affect the statute of limitations analysis.

3

Plaintiff's case is barred by the four-year statute of limitations governing federal RICO claims and the five-year statute of limitations governing Florida RICO claims. (Docs. 19, 20, 23).

## II.   STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citations and quotation marks omitted). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013) (quoting La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)).

4

## III.     ANALYSIS

Plaintiff alleges that Defendants coerced her, Kuhn, Davie, and likely other expectant mothers into giving consent for the adoption of their children using fraudulent methods, and that Defendants' actions violate the federal and Florida civil RICO statutes. (Doc. 6, statement of the case). According to the complaint, the predicate acts occurred "at least from December 1993 to August 16, 2005." (Id. at 50 ¶ 237(a)). As a result of Defendants' alleged misconduct, Plaintiff "suffered damages to the extent that she has lost the right to parentage of her children by reason of signing a document surrendering her right which was procured through fraud and coercion." (Id. at 51 ¶ 238). She further states that she "has suffered losses equal to the legal fees that she has spent attempting to reverse the wrongful relinquishment of her parental rights and to enforce the provisions of the invalid open adoption agreement." (Id.). In response, Defendants argue that Plaintiff knew she had been injured in August 2005, or January 2008 at the latest, and thus, the federal and Florida civil RICO statutes of limitations bar her claims. (Docs. 19, 20, 23).

Under the federal RICO statute, it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting 18 U.S.C. § 1962(c)). The civil RICO provision allows a private plaintiff "injured in his business or property by reason of a violation of section 1962" to recover treble damages. 18 U.S.C. § 1964(c). "The statute of limitations for civil RICO actions is four years." McCaleb v. A.O. Smith Corp., 200

F.3d 747, 751 (11th Cir. 2000). "The action begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001) (citing Rotella v. Wood, 528 U.S. 549, 555 (2000) (internal quotations omitted)). Further, once the limitations period starts to run, a later-occurring predicate act does not restart it. Klehr v. A.O. Smith Corp., 521 U.S. 179, 187-88 (1997). Florida law provides that civil RICO claims are barred by a five-year statute of limitations. Fla. Stat. § 895.05; Efron v. Milton, 892 So. 2d 497, 500 (Fla. Dist. Ct. App. 2004).

In order to survive a statute of limitations challenge, Plaintiff would have to show that she did not discover her injury—as she describes in her complaint, "the loss of the right to parent her children"—until after October 2, 2011 (to satisfy the federal statute of limitations) or October 2, 2010 (to satisfy the Florida statute of limitations). Such an effort would be impossible. Here, as alleged in her complaint, at a minimum, Plaintiff was aware of the central issues in her case, including her alleged injury, in August 2005, when she signed the adoption papers and almost immediately thereafter took legal action to reverse her decision. Even if the Court took the latest relevant date in the complaint into consideration—January 2008, the date on which Plaintiff asserts she "realized that she had been defrauded by [Defendants]" (Doc. 6 at 40 ¶ 233)—she still would not satisfy either statute of limitations.

Nevertheless, Plaintiff asserts that she is entitled to relief based on: (1) the fact that she did not know that she had a cause of action arising from Defendants' coercion until the Florida appellate court issued an order in 2012 affirming the lower court's

6

opinion that the open adoption agreement was unenforceable, and (2) Defendants' alleged fraudulent concealment. (Doc. 36). While the legal basis for her arguments is somewhat unclear, she appears to rely on three exceptions to the statute of limitations: the doctrine of equitable tolling,[5] the delayed discovery rule,[6] or the separate accrual rule.[7] For the following reasons, these arguments are unavailing.

First, Plaintiff states in her response that

> the Plaintiffs did not know and could not reasonably have known that they had a cause of action arising from Defendants' coercion via their so-called 'open adoption agreement' until the per curiam order dated October 17, 2012. This order, from the District Court of Appeal, First District of Florida, affirmed the Fourth Judicial Circuit Court of Duval County, Florida's final summary judgment rendering the open adoption agreement unenforceable.

---

[5] Under the doctrine of equitable tolling, "a plaintiff may sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1334 (S.D. Fla. 2012) (citation omitted); Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1252 (11th Cir. 2001), as amended (July 3, 2001) ("But 'the very nature of such tolling' is that it be 'the exception, not the rule.'") (quoting Rotella v. Wood, 528 U.S. 549, 561 (2000)).

[6] The "delayed discovery" exception postpones the accrual of a cause of action "until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." Hearndon v. Graham, 767 So. 2d 1179, 1184 (Fla. 2000).

[7] Under the separate accrual rule, "if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." Lehman, 727 F.3d at 1331 (citations omitted). However, the "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Id. (citations omitted). "By extension, when an injury is a continuation of [an] initial injury, it is not new and independent. Id. (quoting Pilkington v. United Airlines, 112 F.3d 1532, 1537-38 (11th Cir. 1997) (internal quotation marks omitted)).

7

(Doc. 36 at 7). However, to the extent Plaintiff contends that she was unaware until October 17, 2012 that the open adoption agreement was not enforceable due to Defendants' alleged fraudulent concealment, her own allegations belie this argument. Indeed, Plaintiff alleges that in January 2008, she became aware of Defendants' alleged fraud when the North Carolina courts would not enforce the open adoption agreement. (Doc. 6 at 38 ¶¶ 220, 231-33). Moreover, Plaintiff alleges that "after all of Stevens' promises that the open adoption agreement would be enforceable . . . the open adoption agreement proved to be <u>unenforceable at law</u>." (<u>Id.</u> at 40 ¶ 232) (emphasis added). Thus, the allegations show that as of 2008, Plaintiff knew she had lost her parental rights and that the open adoption agreement was unenforceable.

Plaintiff's ignorance of a potential RICO scheme does not alter the analysis, as the statute of limitations period begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering. <u>Rotella</u>, 528 U.S. at 555. Because Plaintiff was aware in either 2005, or at the latest in 2008, of the allegedly fraudulent conduct and the injury that comprises the basis for all of her RICO claims, no grounds exist to apply the doctrine of equitable tolling or the delayed discovery exception.[8] <u>See</u> <u>Pac. Harbor</u>, 252 F.3d at 1252 ("Equitable tolling is defeated . . . when it is shown that indisputably the plaintiffs 'had notice sufficient to prompt them to investigate and that, had they done

---

[8] Similarly, to the extent Plaintiff alleges that she, Kuhn, and Davie are acting <u>pro se</u> and lacked the power and resources to investigate Defendants' actions, (Doc. 36 at 9-10), her arguments fail for the reasons stated above and because, as explained <u>infra</u>, note 8, she lacks standing to assert claims on others' behalf.

8

so diligently, they would have discovered the basis for their claims.'") (citations omitted); Acosta v. Campbell, No. 6:04CV761ORL28DAB, 2006 WL 146208, at *11 (M.D. Fla. Jan. 18, 2006) ("Assuming arguendo that a "delayed discovery rule" of some sort could apply in a RICO action, it would not apply to the facts alleged by Acosta because he knew of his "injuries"-the alleged false jurat, usury, and unlicensed mortgage lending-in 2000 when he signed the documents at issue. . . . The fact that Acosta did not realize the allegedly RICO aspects of the documents does not provide a basis for assertion of a "delayed discovery" defense five years later.").

Next, in her response, Plaintiff provides examples of Defendants' alleged fraudulent concealment, specifically that "Shorstein and Stevens have both committed perjury . . . when they lied in court time and time again to uphold the Quets adoption." (Doc. 36 at 9). Additionally, she argues that Stevens has committed perjury and obstruction of justice in furtherance of the alleged scheme, such as drafting false birth mother interview reports. (Id.). However, even if Plaintiff had provided dates for this alleged misconduct—which she did not—these alleged acts would not trigger the separate accrual rule. If anything, these allegations merely reflect a continuation of her initial 2005-2006 injury, the loss of her parental rights over her children, as opposed to a new and independent injury which might provide her relief. See Lehman, 727 F.3d at 1333. Because she was aware of her injury in 2005 or 2008, these allegations provide no basis for the application of the separate accrual rule now.

On its face, Plaintiff's complaint shows that her claims are barred by the federal and Florida RICO statutes of limitations.[9] Because Plaintiff cannot alter the relevant dates, further amendment would be futile. See Ageloff v. Kiley, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004) ("[A] plaintiff may not use an amended complaint for the purpose

---

[9] To the extent Plaintiff attempts to assert claims on behalf of Kuhn and Davie, these claims also fail. As an initial matter, while Kuhn and Davie are referenced extensively in the complaint, they are not parties to the case. Regardless, their claims would be barred by the relevant statutes of limitations.

Defendants allegedly coerced Kuhn into entering into an adoption agreement for her child in 1998. (Doc. 6 at 12-13 ¶ 64). By 2001, the adoptive parents stopped honoring the open adoption agreement, and Kuhn contacted the Shorstein Defendants to attempt to enforce her rights under the agreement, with no success. (Id. at 14 ¶¶ 71-72). Kuhn contacted Stevens in 2004 and 2005 to try to get in touch with the adoptive parents, again to no avail. (Id. at 14 ¶¶ 73, 75). Plaintiff alleges that Kuhn suffered "severe emotional trauma as a result of the loss of her daughter and Shorstein's deceitful promises to her about the open adoption agreement." (Id. at 15 ¶ 78). The complaint contains no allegations regarding Kuhn that occurred later than 2005. Here, the injury—the loss of Kuhn's child—clearly occurred in 1998, and as late as 2005, Kuhn realized she had lost right to her child and that the open adoption agreement was unenforceable. Therefore, if Kuhn was a party to this action, which she is not, her claims would be time-barred.

Similarly, if Davie was a party to this action, which she, too, is not, her claims are also time-barred. Plaintiff alleges that Davie signed an adoption agreement in September 1994. (Id. at 16 ¶ 88). She allegedly contacted Shorstein as late as 2005, but has been unsuccessful in her attempts to see her child. Here, the injury—the denial of contact with her child—occurred in 1994, and Davie discovered that the agreement was unenforceable as early as 1994 or even as late as 2005. Regardless, none of the dates in the complaint related to Davie occurred after 2005, and therefore, her potential claims are time-barred.

Finally, to the extent Plaintiff attempts to bring a suit "on the behalf of all natural mothers who have been victimized by the activities of the Shorstein and Kelly adoption enterprise," (Id. at 2-3), she lacks standing to do so. Plaintiff has not attempted to plead a class action, and any attempt to do so would be futile because she lacks standing to serve as a class representative because her own claims are time-barred. See Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1347 (11th Cir. 2001) ("It is by now clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class.").

10

of correcting a statute of limitations problem."). Because the Court's conclusions on the statute of limitations issues are case-dispositive, it is not necessary to address Defendants' remaining arguments.

Accordingly, it is hereby

**ORDERED:**

1. Defendants Michael Shorstein, Brian Kelly, and Shorstein & Kelly, P.A.'s Motion to Dismiss or Motion to Quash Service of Process (Doc. 19); Defendant First Coast Adoption Professionals' Motion to Dismiss (Doc. 20); and Defendant Kathleen Stevens's Motion to Dismiss (Doc. 23) are **GRANTED** to the extent stated herein.

2. This case is **DISMISSED with prejudice**.

3. The Clerk shall close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 9th day of February, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record

Pro se Plaintiff

11